**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT WICHITA, KANSAS**

| | |
|---|---|
| DEREK A. DYRENFORTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| TRACI L. HALL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **COMPLAINT**

**COMES NOW** the Plaintiff, by and through his attorney, and for his causes of action against this defendant hereby states and alleges as follows:

**I.    THE PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Derek A. Dyrenforth is a United States citizen who was born and raised in Southern California but has resided in Japan since 2015.

2. The incidents that are the subject of this Complaint occurred in or around the cities of Oxnard, California, Las Vegas, Nevada and Derby, Kansas, as well as throughout the United States and around the world via social media accounts that propagated the tortious statements. Based upon information and belief the seminal tortious statements were primarily published on publicly accessible internet platforms, to some extent on limited access text messaging and voice chat, by Defendant Traci L. Hall from her domicile in Derby, Sedgwick County, Kansas.

1

3. The Court has subject matter jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1332(a) as there is complete diversity of citizenship and the amount in controversy is in excess of $75,000.00 exclusive of interest and costs.

4. Defendant TRACI L. HALL is a resident of Derby, Sedgwick County, Kansas.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as the Defendant is a resident as defined in 28 U.S.C. § 1391(c)(1) of Sedgwick County Kansas.

6. Plaintiff Derek Dyrenforth is also a video game enthusiast with a special interest in fighting games played over the internet. While attending high school in Chatsworth, a suburb of Los Angeles, Plaintiff participated in local video game tournaments and organized groups of fighting game enthusiasts. After graduating with honors from Chatsworth High School, he began attending video game tournaments and conventions throughout California and in other states.

7. Through friendships established during video game tournaments and conventions, Plaintiff met developers of video games and began offering them suggestions for improving their games. He also helped game developers organize events for promotion of video games and worked as an announcer/commentator at tournaments.

8. In early April of 2014, unknown to Plaintiff at that time, Defendant began contacting mutual friends by private messaging and chat on Twitter and other

social media platforms, claiming she had objected to a sexual encounter with Plaintiff on or about March 29, 2014 and he had physically forced her to submit to sexual intercourse. According to a text message issued by a Mr. Beaty on April 6, 2014 and a subsequent message from a Mr. Carrasquillo, neither of them believed Defendant's claim that Plaintiff had sexually assaulted her. Based upon text messages issued and archived by Mr. Beaty, Mr. Carrasquillo and Defendant, she then began embellishing her false allegation of sexual assault by Plaintiff with details, but these details varied significantly each time she re-told the story and she was never able to provide a consistent and coherent account which either Mr. Beaty or Mr. Carrasquillo considered credible.

9. In text and voice chat with Mr. Beaty and Mr. Carrasquillo during early April of 2014, Defendant initially claimed she had clearly indicated to Plaintiff by words such as "No," "Stop," and "Don't," as well as by gestures and physical actions, that she strongly objected to a sexual encounter with him on or about March 29, 2014, but Plaintiff compelled her to submit to sexual intercourse by using physical force.

10. When Mr. Beaty and Mr. Carrasquillo refused to believe Defendant's allegation that Plaintiff had physically forced her to submit to sexual intercourse, she amended her false narrative, claiming she told Plaintiff "I can't," but then said nothing further, remaining completely mute and passive while Plaintiff had sexual intercourse with her, because she was too

frightened and disoriented to speak or indicate by any gesture or body movement that she objected to it.

11. When Mr. Beaty and Mr. Carrasquillo again told Defendant, they did not believe her allegation that Plaintiff had forced her to have sexual intercourse on or about March 29, 2014, she admitted she had consented to sexual intercourse with Plaintiff on that date. On April 6, 2014, in a private text message to Mr. Beaty, which has been archived, Defendant stated she was initially reluctant to have sexual intercourse on or about March 29, 2014 because she was worried it might make her miss her flight home, but then consented to it because "…I don't like disappointing people."

12. In private internet chat with Mr. Carrasquillo during early April of 2014, Defendant admitted she had multiple sexual encounters with Plaintiff, all of them, including the subject encounter on or about March 29, 2014, completely consensual.

13. Defendant apparently "forgot" that in April of 2014, she had admitted to Mr. Beaty and Mr. Carrasquillo that she had multiple sexual encounters with Plaintiff during her visit to California and they had all been fully consensual. In July 2014 She sent private messages to Mr. Beaty, re-asserting her false allegation that Plaintiff had sexually assaulted her on or about March 29, 2014 and complaining that Mr. Beaty's decision to participate in the tournament had left her alone with Plaintiff, thereby giving Plaintiff another opportunity to assault her.

14. Defendant then attempted to exploit Plaintiff's friendship of several years with Mr. Beaty by asking him to help her coerce Plaintiff into "confessing," in Mr. Beaty's presence, that he had somehow forced her to have sexual intercourse on or about March 29, 2014.

15. In August of 2014, Defendant attempted to exploit Plaintiff's longstanding friendships with both Mr. Beaty and Mr. Carrasquillo by asking them to help her coerce Plaintiff into executing a written "confession" that he had somehow forced her to have sexual intercourse on or about March 29, 2014.

16. Based upon information and belief, from March of 2014 to the present, Defendant has never filed a formal Complaint with any law enforcement agency alleging that Plaintiff sexually assaulted her, nor has she filed any civil Complaint alleging damages from any alleged assault by Plaintiff.

17. Based upon information and belief, by monitoring statements on internet platforms dedicated to *Skullgirls* and other fighting games, Defendant identified individuals she felt would be sympathetic to her, accept her false allegation of sexual assault by Plaintiff and perhaps be willing to assist her with stalking Plaintiff and attacking Plaintiff's reputation using the internet. In particular, Defendant sought to recruit individuals on *Skullgirls* platforms who proclaimed themselves "social justice" advocates and also had access to Mr. Zaimont. Based upon information and belief, in late 2014, Defendant began shaping supporters recruited from the *Skullgirls* community into a "whisper network" dedicated to the dissemination of false and defamatory statements regarding Plaintiff by means of private messaging and voice chat.

        In particular, Defendant sought to utilize those members of her network with access to Mr. Zaimont to destroy Plaintiff's personal and business relationships with him, as well as Plaintiff's business relationships with Reverge Labs, Lab Zero Games, M2 and Autumn Games, which Plaintiff had invested years in cultivating.

18. In late 2014, Plaintiff accepted a position teaching English in Japan with a contract renewable annually and renewal of his residence visa contingent on renewal of his employment contract.  In April of 2015, Plaintiff moved to Japan and has been residing in Japan since then.

19. During 2018-2019, based upon information and belief, by means of private text and voice chat messages transmitted on the internet, Defendant repeated her false allegation against Plaintiff to members of her "whisper network" in the *Skullgirls* gaming community, particularly those with access to Mr. Zaimont, requesting that they urge Mr. Zaimont to accept her allegations as credible and impose sanctions on Plaintiff.

20. In September of 2019, Defendant Traci Hall succeeded in gaining access to Mr. Zaimont and with hearsay corroboration from her sympathizers in the *Skullgirls* community, persuaded him to accept her false allegation Plaintiff had somehow forced her to have sexual intercourse on or about March 29, 2014.

21. Plaintiff recognized that Defendant's false and malicious accusation of sexual assault had not only ended his ten-year friendship with Mr. Zaimont but also his business relationship with Reverge Labs as well as his carefully

cultivated business relationships with Lab Zero Games, M2 and Autumn Games, the other corporate entities which had partnered with Reverge Labs in developing, marketing and distributing *Skullgirls*.

22. During his terminal e-correspondence with Mr. Zaimont in September of 2019, Plaintiff experienced a further increase in his anxiety, sleep disturbance, neurological, visual, musculoskeletal and gastrointestinal symptoms.

23. Defendant then became angry and resentful toward the entire *Skullgirls* community. On or about July 1, 2020, for the first time since the subject sexual encounter on or about March 29, 2014, Defendant published her false allegation that Plaintiff had sexually assaulted her on an internet platform accessible to the public, in the following post on TwitLonger, which she titled "Why I left and resent the SGC [*Skullgirls* community]."

"…I considered ShinATProof [Mr. Dyrenforth] my best friend. [On or about March 22, 2014] I went to visit him & J [Jeremiah Beaty] (another popular SG [*Skullgirls* ] player) out in Cali. There was some flirting and some fooling around. I even let them spend the night in my room. Having fun. My last night there Shin [Mr. Dyrenforth] took it too far. It was late and my flight was early the next morning. Not long before needing to head to the airport, he started trying to have sex with me. My back was to him, he kept touching me & saying 'please' & that he was lonely. I repeated, 'I can't' & stayed still. He rolled me onto my back & started to undress me from the waist down. I didn't know what to do. I didn't believe what was happening. He was my friend. This couldn't be happening.

"He [Mr. Dyrenforth] had sex with me while I just laid there. I was in a daze after. I finally asked if he came inside me & he said

7

he meant to pull out.   I got up, went to the shower & scrubbed myself as much as I could.   I was shaking.   What just happened?  It couldn't be – that.

"A few days after I got home I told J [Mr. Beaty] some of what happened.  He said I must've wanted it bc [because] I didn't push him [Mr. Dyrenforth] off and what did I expect?  I buried it & pretended like nothing happened, talked to both of them like normal.  But for Evo [Evolution 2014, a major fighting game convention in Las Vegas] I told J [Mr. Beaty] I didn't want to be alone with Shin [Mr. Dyrenforth].  I told Shin [Mr. Dyrenforth] no hanky panky (the three of us were sharing a room).

"The day after I got to Vegas, I was trying to take a nap in the room.  Shin [Mr. Dyrenforth] came in, laid behind me, and started touching me.  I pretended to be asleep.  I thought if I didn't show any response, he'd stop.  He didn't.  I eventually 'woke up' and pretended I didn't know he was fondling me.  When I got a free moment I texted J [Mr. Beaty] and said I wish he hadn't left me alone.  His response was I should be able to take care of myself.  He blamed me for losing in SG [*Skullgirls*].  He didn't say anything to me the rest of Evo & he told Shin [Mr. Dyrenforth] my feelings about what happened in Cali.  I found this out during the SG [*Skullgirls*] creator panel when Shin [Mr. Dyrenforth] started texting me about it.  I was losing 2 of my best friends & it was all my fault.  If I hadn't overreacted, if I had said 'No' instead of 'I can't,' none of this would be falling apart.

"I spent the rest of Evo pretty much alone.  Shin [Mr. Dyrenforth] and J [Mr. Beaty] were my way to get in good with the SGC [*Skullgirls* community] and now that I wasn't hanging with them, no one really bothered talking to me or inviting me anywhere.  A couple people did, to which I can't thank them enough for.

"I tried telling Shin [Mr. Dyrenforth] how I felt once I got home, but he didn't admit any fault.  Just a 'sorry you feel that way.'  Both of them blocked me on everything.  J [Mr. Beaty] has recently apologized for his handling of the situation & says he doesn't think it was my fault – words I never thought I'd get.
"Every day I think about them.  Every day I deal with the

8

guilt/shame/regret, the 'why didn't I do this' or 'I should've said this.' But now I'm saying it. Shin [Mr. Dyrenforth] assaulted me...."[1]

24. In his text message issued in early July of 2020, Mr. Carrasquillo reported Defendant had ultimately threatened to terminate her friendship with him and Mr. Beaty unless they endorsed her false allegation that Plaintiff had "raped" her on or about March 29, 2014. Mr. Carrasquillo stated, "I refused, so did B [Mr. Beaty] because B [Mr. Beaty] couldn't believe D [Plaintiff] had raped her and I refused as well, because while weighing the evidence I got from the three of them, it was obvious she [Defendant] was trying to manipulate us, and I saw what she was doing as blackmail, which I absolutely couldn't stand for."

25. Defendant's false public allegation, in her TwitLonger of July 1, 2020, that Plaintiff had sexually assaulted her elicited an avalanche of hate messages to Plaintiff from around the world. These hate messages prompted by Defendant's false allegation included threats of violence and death. Some of these hate messages accused Plaintiff of being a pedophile, presumably because their authors had confused Defendant's false allegation against Plaintiff with other more recent cases involving prominent individuals in the fighting game community accused of sexual misconduct with underage fans.

26. In addition to a steady flow of hate messages with recurrent increases whenever Defendant repeats her false allegation of sexual assault by Plaintiff

---

[1] Identification within brackets inserted by Plaintiff.

on a publicly accessible internet platform, her calculated and malicious actions have caused severe, perhaps irreversible damage to Plaintiff's status, reputation and acceptance in the internet gaming community.

27. During July of 2020, Plaintiff was notified by a number of prominent promoters of invitational fighting game tournaments, people with whom he had enjoyed cordial relationships for many years, that he would no longer be invited to participate in their tournaments, including some tournaments which he had actually helped to establish.  These tournament promoters condemned Plaintiff as a "rapist" and stated that if he appeared at certain events uninvited he would not be permitted to participate.

28. During July of 2020, a number of prominent tournament level players of fighting games with whom Plaintiff had longstanding friendships, players who derive large incomes from tournament play and have many thousands of followers, candidly admitted that while they did not consider Defendant's allegation of sexual assault remotely credible, the effect of her false allegation was nevertheless so "toxic" that they could not risk having the internet fighting game community perceive them as supporting Plaintiff, or even being publicly associated with Plaintiff in any way.

29. During early May of 2020, Plaintiff was contacted by executives from Animé Illuminati, a Tokyo-based video production entity which covers fighting game tournaments in Japan, South Korea and Singapore, providing play-by-play commentary and interviews with prominent players.

30. The representatives of Animé Illuminati informed Plaintiff they had been "scouting" him for some time and wanted to use him as host and commentator for their coverage of "EVO 2020," an international fighting game mega-tournament of unprecedented size. They stated that they wanted to establish a higher level of production quality than their previous programs and if things went well, they planned to use Plaintiff as their host/commentator for coverage of other gaming tournaments and conventions in Japan, South Korea and Singapore. They stated that for the first season, Plaintiff would be compensated on a per-event basis, with all expenses for travel, hotel and car rental covered, as well as a per diem allowance for all events held in locations other than Tokyo.

31. Animé Illuminati indicated that if the first season went well, they intended to offer Plaintiff a multi-year contract. They stated they were aware of Defendant's allegation of sexual assault but did not consider it credible and felt Plaintiff's reputation was sufficiently positive and well-established that Defendant's false accusation could be ignored.

32. However, less than ten weeks later, after Defendant had posted her TwitLonger of July 1, 2020, the representatives from Animé Illuminati informed Plaintiff that the distributing company with which they had partnered to market their programming throughout Europe, Asia and North America was also aware of Defendant's accusation against Plaintiff, and executives at the distributing company felt that even if her accusation was false, it was nevertheless so "toxic," they could not risk being perceived by

11

the international community of fighting game enthusiasts as supporting Plaintiff or associating his name with their brand.

33. In October of 2020, Defendant was served by mail with a letter from Plaintiff's counsel demanding that she stop making defamatory statements about Plaintiff and remove all such statements she had posted.

## COUNT I – DEFAMATION

COMES NOW the plaintiff and for Count I of his Complaint against Defendant, states and alleges the following cause of action:

34. Plaintiff adopts and incorporates by reference paragraphs 1 through 33 of his Complaint as if fully set forth herein.

35. From April of 2014 to the present, Defendant has engaged in false communications regarding Plaintiff with malicious intent to injure Plaintiff, as more fully set forth in paragraphs 1 through 33, above.

36. Defendant's false and malicious communications regarding Plaintiff have been by electronic means, on the Internet and World Wide Web, beginning in April of 2014 with limited access private messaging and voice chat, then, on July 1, 2020, escalating to public statements readily accessible to a global audience on Twitter, TwitLonger and similar "social media" platforms.

37. Defendant's false internet communications regarding Plaintiff have been issued with malicious intent, specifically designed to expose Plaintiff to public ridicule and hatred, intended to deprive him of social acceptance, not only within his chosen peer group of video game enthusiasts but also within civilized society at large, in America, Japan and throughout the world.

38. Defendant's false communications regarding Plaintiff were not communications that were in response to investigative inquiries regarding the commission of a crime.

39. Defendant's false communications regarding Plaintiff were not communications involving matters of legitimate public concern.

40. Defendant's false communications regarding Plaintiff were not information concerning a public official

41. Defendant's false communications about Plaintiff were not regarding a matter involving an employer-employee relationship.

42. Defendant's false statements regarding Plaintiff have not been made in good faith and are not protected by a qualified or conditional privilege. In April of 2014, Defendant admitted to Mr. Jeremiah Beaty and Mr. David Carrasquillo that all her sexual encounters with Plaintiff, including the subject sexual encounter on or about March 29, 2014, were fully consensual

43. As a direct and proximate result of Defendant's false communications regarding Plaintiff, he has suffered emotional distress, incurred expenses for medical care of physical and psychological symptoms which have become chronic and are continuing, suffered ridicule and derision, lost business relationships and opportunities which he had spent years cultivating, lost reputation and acceptance in his community, and suffered other such damages as will be established and presented at trial, the aggregate value of such damages exceeding $75,000.

WHEREFORE, and by reason of the above and foregoing, Plaintiff prays for judgment against this defendant in an amount in excess of $75,000.00, exclusive of interest and costs, and for such other relief as the Court deems just and equitable, and he demands a trial by jury on all issues so triable as a matter of right.

## COUNT II – RIGHT TO PRIVACY

COMES NOW the Plaintiff and for Count II of his Complaint against Defendant, states and alleges the following cause of action:

44. Plaintiff adopts and incorporates by reference paragraphs 1 through 33 of his Complaint, above, as if fully set forth herein.

45. Defendant made false and malicious statements regarding the private affairs and concerns of Plaintiff in a public forum on the internet.

46. Defendant made false and malicious statements regarding the private affairs and concerns of Plaintiff in a public forum, as set forth more fully in paragraphs 1 through 33, above.

47. Defendant made false statements regarding the private affairs and concerns of Plaintiff with the specific and malicious intent that these statements would be intrusive and highly offensive to an ordinary person.

48. Defendant further publicized matters of a kind concerning the private life of Plaintiff, in a manner intended to be highly offensive to an ordinary person, as set forth more fully in Paragraphs 1 through 33, above.

49. Defendant further publicized matters about Plaintiff in a manner calculated to place him before the public in a false light, with such false light of a kind highly offensive to an ordinary person.

50. At no time did Plaintiff consent to such false and malicious internet publications of his personal life by Defendant or any other person.

51. As a direct and proximate result of false communications by Defendant, Plaintiff has suffered emotional distress, mental anguish, shame and

>humiliation, incurred expenses for treatment of medical and psychological symptoms which have become chronic and are continuing, suffered ridicule and derision, lost business relationships and opportunities in the U.S. and Japan which he had spent years cultivating, and suffered other such damages as will be established and presented at trial, their aggregate value in excess of $75,000.

WHEREFORE, and by reason of the above and foregoing, Plaintiff prays for judgment against this Defendant in an amount in excess of $75,000.00, exclusive of interest and costs, and for such other relief as the Court deems just and equitable, and he demands a trial by jury on all issues so triable as a matter of right.

## COUNT III – OUTRAGEOUS CONDUCT CAUSING SEVERE EMOTIONAL DISTRESS

.

COMES NOW the plaintiff and for Count III of his Complaint against Defendant, states and alleges the following cause of action:

52. Plaintiff adopts and incorporates by reference paragraphs 1 through 33 of his Complaint, above, as if fully set forth herein.

53. Defendant intentionally and recklessly disregarded Plaintiff's rights, physical and emotional health and well-being by posting untrue statements about his private life on the internet, which statements she knows to be untrue and has long ago admitted to others are untrue.

54. Defendant intentionally and recklessly disregarded Plaintiff's rights, physical and emotional health and well-being as set forth more fully in paragraphs 1 through 33, above.

55. Defendant's conduct of posting on the internet false allegations that Plaintiff physically forced her to engage in sexual intercourse, which allegations she knows to be false and has long ago admitted to others are false, is extreme and outrageous.

56. Defendant's malicious conduct, which has spanned more than six years and is continuing, has caused Plaintiff frightening physical symptoms and intense mental distress for which he has been compelled to seek medical care.

57. Plaintiff's physical and mental distress due to Defendant's malicious conduct is well documented in medical records, indisputably genuine, severe and so extreme that no reasonable person should be expected to endure it.

58. Plaintiff has endured the effects of Defendant's malicious conduct for more than six years, hoping she would realize how damaging her actions are and stop them.  However, Defendant has instead chosen to increase her efforts to destroy Plaintiff's reputation and his life.   Defendant's false and malicious statements regarding Plaintiff constitute conduct that is outrageous in character and so extreme that it is beyond the bounds of decency.

59. Defendant's conduct of making false and malicious statements regarding Plaintiff, while misrepresenting such statements as advocacy for "social justice" and women's rights, is so atrocious that it is utterly intolerable in a civilized community.

17

60. Defendant's conduct in making false and malicious statements that Plaintiff sexually assaulted her is reckless, demonstrating depraved indifference and callous disregard for the dangers she has thereby created for Plaintiff, not just within his chosen peer group, the international community of video gaming enthusiasts, but also within the much larger global community of all who use social media platforms on the internet.

61. As a direct and proximate result of Defendant's false and malicious statements, Plaintiff has received accusations of horrific and repugnant criminal sexual acts, including pedophilia, as well as threats of violence and death.

62. Defendant has published false statements of a sensitive nature regarding Plaintiff for the express purpose of subjecting him to ridicule, derision and hatred, causing him to suffer fear and emotional distress.

63. Defendant knew, or in the exercise of reasonable diligence and responsibility, should have known, that publication on the internet of false statements accusing Plaintiff of sexual assault would expose him to ridicule, derision and hatred from individuals around the world, causing him to suffer fear, emotional distress and physical symptoms.

64. At no time did the Plaintiff consent to publication of statements on the internet regarding his personal life, particularly false statements accusing him of criminal sexual assault.

65. As a direct and proximate result of Defendant's false internet communications, Plaintiff has lost business opportunities he spent years

cultivating, been subjected to ridicule, derision and hatred, suffered emotional distress, mental anguish and humiliation, incurred expenses for medical treatment of mental and physical symptoms, and suffered other such damages as will be established and presented at trial, their aggregate value in excess of $75,000.

WHEREFORE, and by reason of the above and foregoing, Plaintiff prays for judgment against this defendant in an amount in excess of $75,000.00, exclusive of interest and costs, and for such other relief as the Court deems just and equitable, and he demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted on this the 19th day of May, 2021.

Respectfully submitted,

RAY HODGE & ASSOCIATES, L.L.C.
8558 W. 21st St. N., Suite 300
Wichita, KS 67205
Telephone: 316-269-1414
hodgelaw@kansaslaw.com

*/s/ Ryan Hodge*
Ryan Hodge, KS Bar #16180
*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff and demands a trial by jury of his peers in this matter on all issues relating to damages.

> */s/ Ryan Hodge*
> Ryan Hodge, KS Bar #16180
> *Attorney for Plaintiff*

## DESIGNATION FOR PLACE OF TRIAL

COMES NOW, the Plaintiff and designates Wichita, Kansas as the place for trial in this matter.

> */s/ Ryan Hodge*
> Ryan Hodge, KS Bar #16180
> *Attorney for Plaintiff*